### UNITED STATES v. MILLER et al.

### In re ATLANTIC, GULF & PACIFIC S. S. CORPORATION.

(Circuit Court of Appeals, Fourth Circuit. September 29, 1924.)

#### No. 2222.

Shipping ⬢⇒27—Vessel held not to include stores on board.

Where government sold vessels for stated price, and stores therein were separately appraised and paid for on delivery, on retaking ships under contract for default in payment, it cannot claim that vessels include stores then on board, but such stores are property of purchaser.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

In the matter of the Atlantic, Gulf & Pacific Steamship Corporation, bankrupt. From a decree disallowing a claim of the United States to proceeds of ships' stores, the United States appeals. Decree affirmed.

Frederick R. Conway, Admiralty Atty. U. S. Shipping Board, of Washington, D. C (A. W. W. Woodcock, U. S. Atty, of Baltimore, Md., on the brief), for the United States.

L. Vernon Miller and Stuart S. Janney, both of Baltimore, Md. (Janney, Ober, Slingluff & Williams and Marbury, Gosnell & Williams, all of Baltimore, Md., on the brief), for appellees.

Before WOODS and WADDILL, Circuit Judges, and SMITH, District Judge.

SMITH, District Judge. The United States government, through the Shipping Board, made three agreements to sell to the Atlantic, Gulf & Pacific Steamship Corporation the merchant steamships West Haven, Cape Romain, and Charles H. Cramp. The three agreements are exactly alike in all provisions material to this appeal. In the case of each steamship the purchaser was bound (in addition to the stipulated price to be paid for the steamship) to pay to the seller, on delivery of the vessel to the purchaser, "the current market value at the port of delivery of all consumable stores (U. S. S. B. Classification) then aboard the vessel, and the current market value at the port of delivery of all excess equipment then on board, over and above the standard equipment of the specific type of the vessel as shown by seller's schedule, such value to be based upon joint inventory taken by representatives of the seller and the buyer."

Under the agreement the purchase price of each vessel was to be paid in installments. After 50 per cent. of the purchase price had been paid, the seller was to deliver to the purchaser a bill of sale of each vessel and to accept a preferred mortgage securing the remaining 50 per cent. of the purchase price. Under the agreement no cash was to be paid for the vessel and its equipment. The "consumable stores" and "excess equipment" were to be paid for, cash on delivery of the vessel to the purchaser, but the stipulated price for the vessel and its equipment was to be paid in installments only after the delivery of the vessel. The first installment of 6 per cent. of the total

stipulated price not to be paid until six months after the date of the delivery of the vessel to the purchaser. It was further provided in the agreement that if, at any time after the delivery of the vessel to the purchaser "and prior to the transfer of title hereunder, the buyer shall fail to perform any of its covenants and agreements herein made, the seller shall have the right at any time after such default to withdraw the vessel from the buyer, * * * and the seller may retain all amounts paid by the buyer hereunder * * * as liquidated damages."

The purchaser having made default in the payment of all of the installments to be made as to each of the three vessels, the government filed possessory proceedings in admiralty on August 12, 1922, against the three steamships, under which proceedings the vessels were seized and subsequently decreed to be delivered over to the government as entitled to the title and possession thereof under the agreement.

The only question for determination on this appeal is whether the government is entitled under the agreement to the "consumable stores" on the vessels at the date of the seizure under these proceedings. For the "consumable stores" on the steamships when the government delivered them to the purchaser, the government has already been paid in full. It would not be entitled to have them back, unless the agreement conferred that right. The agreement provides that, upon the buyer's default, the seller may withdraw the "vessel." Does "vessel," as here used, include "consumable stores"? In the case of Atlantic, Gulf & Pacific S. S. Corporation v. U. S. (D. C.) 287 Fed. 714, the learned judge from whose decree this appeal has been taken decided the identical question, and followed his decision in the present case.

We concur in his reasoning under the authorities. Under the language of the agreements involved in the present case, it appears that the vessel and its equipment was dealt with as separate and distinct from "consumable stores" and "excess equipment." When, therefore, the agreement provided that for default in the buyer's covenants the seller could withdraw the "vessel," it evidently contemplated that, if the buyer failed to pay for the vessel, the seller could retake it. The "consumable stores" had already been paid for. There could be no default in that payment. The word "vessel" here has the meaning attached in the first clause of the agreement, where the price of the "vessel" is stated,

and which word in clause 3 is shown under the agreement not to include "consumable stores."

The decree below is accordingly affirmed.