## MOORE v. MARTIN MARINE TRANSP. CO.

### Civ. No. 886.

United States District Court
E. D. Virginia, Norfolk Division.
March 31, 1949.

Roy L. Sykes, of Norfolk, Virginia, for plaintiff.

Leon T. Seawell (of Hughes, Little & Seawell), Hugh S. Meredith (of Vandeventer & Black), both of Norfolk, Virginia, for defendant.

BRYAN, District Judge.

Indisputably the plaintiff is entitled to a judgment in personam against the principal defendant for the full amount of his claim, but the contest here is on his right to subject to its payment the bunker fuel oil aboard the tug P. F. Martin, the plaintiff having levied an attachment at law on the oil in aid of his action. The tug, with the

identical fuel oil in her tanks, had theretofore been sold by this court in an admiralty suit brought to enforce numerous maritime liens, and not having been satisfied by the sale proceeds, these lienors, and the purchaser of the tug, have intervened to claim the oil.

The decision of this contest turns upon the question whether the bunker oil was a part of the vessel.

In the admiralty cause the P. F. Martin was arrested under the customary designation—the vessel, her engines, boilers, tackle, apparel etc. The plaintiff, arguing that "bunkers" are not a part of the vessel, relies on the master's report, a clear holding to that point, confirmed in the consolidated suits of Chesapeake Stevedoring Co. v. S.S. Dalana, Nos. 2803, 2821, 2829, and 2860, before this court in 1923. The master found precedent for his conclusion in the decision by the Supreme Court of Newfoundland of S.S. Hope & Panther Co. v. Trustees, Baine, Johnson & Co., Newfoundland Reports 1884-96, p. 881.

The reasoning by which the master reached his conclusion was that nothing could be a part of a ship which was not permanent, and that as "bunkers" (coal in his case) were consumable, their impermanence excluded them on principle from consideration as an appurtenance of the vessel.

But our search convinces us that this principle has not generally been adopted as the test, for even stores have been held by the highest authority to be appurtenant to a ship. The Manila Prize Cases, 188 U.S. 254, 23 S.Ct. 415, 47 L.Ed. 463. The Court there in effect said that everything needed to operate the ship in her enterprises— whatever was used or useful in making her a going concern—was a part of the ship. "Victualling" was specifically enumerated. 188 U.S. at page 269, 23 S.Ct. at page 421. We think fuel, indispensable to the operation of the vessel, is clearly within this category. The Supreme Court said too that the addition of the words "boilers, engines, tackle, apparel, furniture, equipment and boats" added nothing—that all of those articles were embraced in the term ship. 188 U.S. at page 268, 23 S.Ct. at page 421.

The Newfoundland decision is grounded on the same reasoning, supporting a like conclusion, adopted by the United States District Court for Maryland in Atlantic Gulf & Pacific S.S. Corp. v. United States, 287 F. 714, 715, affirmed 4 Cir., 2 F.2d 248. In each the bunker coal was adjudged not a part of the vessel, but solely because the libellants, seeking as mortgagee or vendor-lienor to repossess the vessels, in the creation of their liens had expressly or circumstantially distinguished between the ships and the fuel aboard them. Indeed, in the latter suit Judge Rose recognized, as doctrine in the Federal courts of admiralty, that bunker coal is appurtenant to a ship, and does not pass with her transfer only when, as in the case before him, the ship and her fuel are expressly separated in the agreement of the parties.

The Court is of the opinion that the purchaser of the P. F. Martin acquired, as a part of her, the fuel oil in her tanks at the time of her sale. An order will be entered awarding the plaintiff judgment for the full amount of his claim, but quashing the attachment of the fuel oil on the ground that it was not the property of the principal defendant when the levy was made.